## WOOLLEY *et al. v.* GAINES *et al.*

Ignorance by one party to an alleged contract of the fact that the other party was insane at the time of its execution does not per se entitle the former to enforce it against the latter.

Argued October 11,—Decided November 7, 1901.

Complaint for land.    Before Judge Fite.    Bartow superior court.    January term, 1901.

*James B. Conyers* and *B. J. Conyers*, for plaintiffs in error, cited, as to the effect of ignorance by the grantee of the mental incapacity of the grantor : Civil Code, § 3652; *American Trust Co.* v. *Boone*, 102 *Ga.* 202; *Bunn* v. *Postell*, 107 *Ga.* 490; *Orr* v. *Equitable Mortgage Co.*, Id. 500.

*John H. Wikle*, contra, cited, on the same subject: Clark on Contracts, 270, 271; Bishop on Contracts, §§ 963, 964, 970; 11 Am. & Eng. Enc. L. (1st ed.) 150; 16 Am. & Eng. Enc. L. (2d ed.) 625.

LEWIS, J.  The plaintiffs below brought suit to recover from the defendants certain land in Bartow county.   The only controversy in regard to the title was as to the validity of a warranty deed from Sarah Woolley, under whom both the plaintiffs and the defendants claim, conveying the property in dispute to the plaintiffs, Gaines and Lewis.    It was claimed that this deed was fraudulently obtained, and was void, because at the time of its execution Sarah Woolley was insane and incapable of making a valid contract.  The conveyance recites a consideration of $460, which the plaintiffs alleged was the amount of an indebtedness due them by Sarah Woolley, the deed being made in satisfaction of that indebtedness.    Considerable evidence was introduced as to the mental condition of Sarah Woolley and her capacity to understand what she was doing when she signed the deed in question, and this evidence was more or less conflicting.    On this point the court charged the jury as follows : " If you find that she [Sarah Woolley] was of weak mind, and that

weakness amounted to imbecility, and therefore she did not have mental capacity to make this deed, then you will go further and ascertain whether or not Gaines and Lewis, or either of them, knew or had knowledge of her mental imbecility at the time of the execution of the deed ; for if she was mentally incapacitated to make the deed and Gaines and Lewis did not have knowledge of the fact and took the deed in good faith, then her mental incapacity would not warrant you in setting aside the deed, and you would sustain the deed notwithstanding her mental incapacity, if you find that they did not know or had no knowledge of the fact of her mental imbecility." The jury returned a verdict for the plaintiffs, and the defendants excepted.

The portion of the charge of the court which we have quoted was plainly error. No question as to the knowledge or want of knowledge of the plaintiffs, or either of them, concerning the mental condition of Sarah Woolley, should have been injected into the case. "A person whose mind is so unsound as not to have capacity to contract is .  . incapable of making a binding deed of conveyance. But the deed of one who has not been judicially declared insane is not wholly void; it conveys the seizin, and must therefore be avoided at the grantor's instance after restoration to reason, or at the instance of his heirs or legal representatives after his death." 9 Am. & Eng. Enc. L. (2d ed.) 119. "The contract of an insane person who has never been adjudged insane by any tribunal of competent jurisdiction is voidable, after his death, at the option of his personal representatives." *Bunn* v. *Postell*, 107 *Ga.* 490, and cases cited. And it is well established by the repeated rulings of this court, based upon sound authority, that ignorance by one party to a contract that the other party was insane when it was executed does not affect the validity of the instrument. See *American Trust & Banking Co.* v. *Boone*, 102 *Ga.* 202, where it was held that a bank would not be protected in paying the check of a person who had been lawfully adjudged to be insane and who was in fact insane when the check was drawn, although the fact of insanity was unknown to the bank at the time of payment and the adjudication of insanity was made in another State. Directly in point, also, is the case of *Orr* v. *Equitable Mortgage Co.*, 107 *Ga.* 499, where the following language is used: "That the other party to the contract was ignorant that the person with whom he was dealing was

in fact insane, and that the existence of such insanity could not have been discovered by an ordinarily reasonable and prudent person, does not make such a contract valid and binding, nor interfere with the right of the legal representative to set up, in defense to an action brought against him on the contract, the insanity of the decedent." To the same effect see *Bunn* v. *Postell*, supra. The rule is based upon the very excellent reason, as stated in Bishop on Contracts, § 970, that "since insanity incapacitates one to make a contract, the mere fact of the other party's not knowing it does not render good what he was legally incompetent to do."

The authorities relied on by counsel for the defendants in error in combating this position have no application to the case under consideration. They presuppose such an execution of the contract as that the parties can not be placed in the position they occupied before it was made. No such state of facts is involved in the present case. From all that appears, except for the deed given to Gaines and Lewis by Sarah Woolley and the verdict obtained by them at the trial below, they are already in statu quo. No money or thing of value has passed out of their hands in consideration of the conveyance. It does not appear that the debt in satisfaction of which the deed is alleged to have been given was made in contemplation of the conveyance of this land. They can not, therefore, take advantage of the equitable rule which they invoke, as there is nothing upon which to base their contention, so far as the record before us is concerned.

The motion for a new trial contains numerous other grounds, but other than as above set out we see no errors of sufficient importance to require a reversal of the judgment. We send the case back for a new trial solely on the ground of error in the charge which we have quoted. *Judgment reversed.* ·*All the Justices concurring.*