27211. SOVEREIGN CAMP WOODMEN OF THE WORLD *v.* ELLIS.

DECIDED MARCH 4, 1939.

*Robert G. Plunkett, R. F. Scarborough,* for plaintiff in error.
*Thomas A. Jacobs Jr.,* contra.

STEPHENS, P. J. Mrs. T. B. Ellis brought suit in the superior court of Bibb County against Sovereign Camp Woodmen of the World, alleging that the defendant was indebted to the petitioner

in the sum of $740.81 besides interest; that the defendant had issued a certificate to T. B. Ellis, by which it agreed to pay to the beneficiary named therein $1000 upon the ·death of T. B. Ellis; that the defendant refused to pay the petitioner the amount due under the certificate, contending that it was canceled by T. B. Ellis on September 7, 1934, which the plaintiff denies and says that on that date and prior thereto T. B. Ellis was of unsound mind and could make no valid contract, and did not know that he was surrendering the certificate, and did not possess sufficient mentality to make a contract, and that this fact was known to the defendant; that T. B. Ellis had borrowed $259.19 on his certificate, which amount should be deducted from the face value of the certificate, but that the certificate was never legally surrendered or canceled, and the deceased T. B. Ellis did not intend to cancel it, and in fact could make no contract surrendering the certificate because of his mental condition, he not being able to understand the nature and quality of his acts; that the defendant refused to pay the certificate on the sole ground that T. B. Ellis surrendered it and received the cash value on September 7, 1934; that, as petitioner alleges, "on this date T. B. Ellis was incapable of contracting and could not make or enter into a valid contract, and his acts on that date and prior thereto are not binding and in law are not his acts, and therefore his insurance remained in full force, virtue, and effect, and the attempted surrender by the defendants and its agents is null and void and in law could not be a legal contract;" that the defendant had received proofs of death satisfactory to it, and that it is estopped from basing its refusal to. pay on any ground except that the policy was surrendered, that being the only reason given for refusing to pay the certificate. Petitioner prayed judgment for $740.81 and interest. By an amendment she alleged that her husband, T. B. Ellis, died on October 20, 1934.

To the petition the defendant demurred generally on the ground that the right of the plaintiff to maintain the suit was not shown; "that the petition as a, whole seeks to rescind an executed contract of settlement, and this court has no jurisdiction to rescind a contract fully executed, a court of equity alone having jurisdiction in such an action, and upon the further ground that before a court of competent jurisdiction can entertain a petition to rescind an executed settlement, such petition must show that plaintiff had re-

stored or offered to restore the money received upon the settlement sought to be rescinded." The defendant also demurred specially on the same grounds as taken in the general demurrer. Other contentions in the special demurrer are not now material. The defendant filed an answer in which it denied the alleged indebtedness to the plaintiff, denied the allegations of the petition to the effect that T. B. Ellis was mentally incapacitated at the time he surrendered the certificate, denied that the certificate was still in force when T. B. Ellis died, denied certain allegations of fraud (which are no longer material), and alleged that on August 22, 1934, Ellis made application for the cash-surrender value of his certificate and a blank application was sent him together with a letter advising him that the cash-surrender value was $259.19, but that it would be necessary to deduct therefrom the amount of the loan which had already been granted him, that the application was executed on September 7, 1934, by Ellis, and that he canceled and surrendered the certificate, that the net amount of the cash-surrender value, after deducting the loan, was $72.45, which amount was paid by a check dated September 14, 1934, which check was indorsed and cashed by Ellis in complete settlement, cancellation, and surrender of the certificate, by reason whereof the defendant was not liable to the plaintiff in any sum. The court overruled the demurrers, and the defendant excepted pendente lite. The jury found in favor of the plaintiff, and· the defendant's motion for new trial was overruled. The defendant excepted, assigning error also on the overruling of its demurrers.

.The demurrers raised two questions. One was that the petition seeks to rescind an executed contract, and that the court has no jurisdiction, a court of equity alone having such jurisdiction. The other was that the petition failed to show that the plaintiff had restored or offered to restore the money received on the settlement sought to be rescinded. As to the first ground, it is sufficient to state that the superior court in which the suit was brought was not without jurisdiction in equity. But even if the petition be construed as a purely legal action it was not subject to the demurrers. This seems to be settled by the decision in *Cochran* v. *Groover,* 156 *Ga.* 323 (118 S. E. 865). The contention that the petition did not show any effort to restore the consideration which was received by the insured at the time of the attempted cancellation of the

certificate can not be sustained. The petition does not distinctly set out what consideration was paid on that occasion, but merely refers to the indebtedness of the insured to the defendant by reason of certain loans, and offers to credit on the face value of the certificate the amounts due upon those loans. This reduced the matter to an accounting between the parties, and the petition alleges that the defendant was due to the plaintiff a much larger sum than the amount advanced to the insured by the defendant. It was not necessary for the plaintiff to repay the amounts received by the insured from the defendant as a condition precedent to maintaining the action. *Collier* v. *Collier,* 137 *Ga.* 658 (3) (74 S. E. 275); *Atlanta Life Ins. Co.* v. *Walker,* 53 *Ga. App.* 80, 84 (184 S. E. 776). In *Fields* v. *Union Central Life Ins. Co.,* 170 *Ga.* 239 (152 S. E. 237), the facts were materially different from those in the present case.

It was contended for the plaintiff in error that the petition did not show any right in the plaintiff to maintain the suit because a petition to cancel the contract of an insane person could be brought only by his personal representative or by his heirs at law. While it is true that such a petition can not be maintained by a third person having no interest in the subject-matter, no decision has been cited in which it is held that the beneficiary of a life-insurance policy or of a fraternal-benefit certificate can not maintain such an action. On the contrary such an action was sustained in the case of *Cason* v. *Owens,* 100 *Ga.* 142 (28 S. E. 75). It was insisted by the plaintiff in error that the contract of an insane person is not void but only voidable, and therefore that it could not be avoided except by a successful suit in equity to cancel it, and that such suit could be brought only by the personal representative or heir of the insane person. Some decisions are cited which deal with the question of ratification of an insane person's contract, and which declare that such a contract is only voidable. *Bunn* v. *Postell,* 107 *Ga.* 490, (33 S. E. 707); *Orr* v. *Equitable Mortgage Co.,* 107 *Ga.* 499 (33 S. E. 708). On the other hand there are other decisions which declare that the contract of an insane person is "utterly void." *American Trust & Banking Co.,* v. *Boone,* 102 *Ga.* 202 (29 S. E. 182, 40 L. R. A. 250, 66 Am. St. R. 167); *Boynton* v. *Reese,* 112 *Ga.* 354 (2) (37 S. E. 437). However, the distinction between voidable and void is immaterial in the present case,

because the contract here could be avoided by proof that the insured was non compos mentis at the time he made it.

The motion for new trial contains the general grounds and several special grounds. Special grounds 4, and 12 to 20 inclusive, are controlled by what has been said in regard to the demurrers, as these grounds merely raise the same question as the demurrers as to the necessity of restoring the consideration of the contract. The fifth ground complains of the admission of certain testimony as to a conversation with an agent of the defendant in which it was said that the agent admitted that he knew of the impaired condition of Mr. Ellis's mind when he executed the cancellation agreement, the objection being that this agent had no authority to bind the defendant by such statements, and that his knowledge could not be imputed to the defendant. Since this agent had testified as to the sanity of the insured and had been asked whether he made the statements imputed to him and had denied them, it was competent for the plaintiff to introduce the evidence objected to, as tending to impeach the testimony of the agent.

The sixth ground complains of an instruction given to the jury by the court in reciting the contentions of the parties in which recital occurred this statement: "The insurance company contends that at the time that contract of cancellation was made T. B. Ellis was of perfectly sound mind." In a later part of the charge the court stated: "The insurance company contends that at the time the contract of cancellation was made T. B. Ellis was a perfectly sane man." This charge is complained of in the tenth ground of the motion for new trial. These short extracts from the charge of the court must be considered in the light of the entire charge and of the pleadings and evidence. So considered, the expression "of perfectly sound mind" means nothing more than the words "entirely sane." The defendant in its answer denied all allegations by the plaintiff of mental incompetency, and there is no suggestion in the testimony of defendant's witnesses that the insured was afflicted with partial insanity or recurrent insanity. The defendant stood squarely on the proposition that the insured was a sane man when the alleged cancellation of the certificate was made. But, nevertheless, the court qualified the phrase "of perfectly sound mind" in the following manner: "The insurance company contends that T. B. Ellis was a man of perfectly sound mind, perhaps

of physical weakness, run down by disease, unable physically to care for himself, but that his mind was perfectly equal to a fair estimation of what he was doing and the results of his acts." This language is a part of the charge complained of in the tenth ground which occurred later in the charge than the language complained of in the sixth ground. In other parts of the charge the court gave the jury correct instructions on mental capacity which would be sufficient to make the contract binding. On the whole, the jury could not have been misled into thinking that the court meant that it was incumbent on the defendant to show that the insured had a perfect mind.

In the seventh ground the plaintiff in error complains that the court erred in charging the jury that if habitual insanity was proved previous to the alleged cancellation the presumption of the law is that such insanity continued to the time at which the alleged cancellation was made. This charge was in accord with the familiar rule of evidence which has been specifically applied to cases of insanity. *Dicken* v. *Johnson*, 7 *Ga.* 484; *Stanley* v. *Stanley*, 179 *Ga.* 135 (175 S. E. 496) ; *Weeks* v. *Reliance Fertilizer Co.*, 20 *Ga. App.* 498 (2) (93 S. E. 152) ; *Joiner* v. *Southern Land Sales Cor.*, 158 *Ga.* 752 (8), 754 (124 S. E. 518).

In the ninth ground the defendant alleges that the court erred in refusing to charge that weakness of mind not amounting to imbecility is not sufficient to warrant setting aside the contract of cancellation, in the absence of fraud or undue advantage. The reference to fraud here is obviously irrelevant, because, although the petition alleged fraud, there was no evidence to sustain this allegation. *Boynton* v. *Reese*, supra. This refusal to charge was not error, in view of what the court charged on the degree of incapacity which would invalidate the contract. The eighth ground of the motion for new trial is without merit for the same reason.

The court did not err in overruling the demurrers. The evidence authorized the verdict found for the plaintiff and no error appears. The court did not err in overruling the motion for new trial. *Judgment affirmed. Sutton and Felton, JJ., concur.*